James COWELL, Petitioner
and Appellant,

v.

Walter LEAPLEY, Warden of the
South Dakota State Penitentiary,
Respondent and Appellee.

No. 16730.

Supreme Court of South Dakota.

Considered on Briefs March 22, 1990.

Decided July 3, 1990.

Todd C. Miller, Beresford, for petitioner and appellant.

Roger A. Tellinghuisen, Atty. Gen., Pierre, for respondent and appellee; Craig M. Eichstadt, Asst. Atty. Gen., Pierre, on the brief.

MORGAN, Justice.

This appeal arises from the denial of the habeas corpus petition of James Cowell (Cowell) challenging the constitutionality of his 1978 conviction for first-degree murder. This court affirmed that conviction on direct appeal. *State v. Cowell*, 288 N.W.2d 322 (S.D.1980) (*Cowell I*). From the determination of the court below (habeas court)

that *Edwards v. Arizona*[1] and *Arizona v. Roberson*,[2] should not apply retroactively, Cowell appeals. We affirm.

*Cowell I* was decided on February 13, 1980. According to the procedure in effect at that time, Cowell had ninety days to petition for certiorari to the United States Supreme Court, which he did not do. Sup. Ct.R. 20. Thus, for direct appeal purposes, Cowell's conviction was final on May 14, 1980. *Roberson* and *Edwards*, the two decisions which Cowell argues should be applied retroactively to his case, were decided after his direct appeal was final.

Subsequent to the denial of his direct appeal, Cowell began a series of collateral attacks on his conviction. First, he filed a habeas corpus petition in state court, *Cowell II*, which was denied. Next, he filed a habeas corpus petition in federal court, *Cowell III*, which was also denied. Cowell appealed that denial to the Eighth Circuit Court of Appeals, where the order was affirmed. Now, he is before us on *Cowell IV*, a habeas corpus petition against Walter Leapley, Warden of the South Dakota State Penitentiary.

Cowell's conviction arose out of the killing of James Clark (Clark) in Union County, South Dakota. Prior to his arrest for the murder of Clark, Cowell was incarcerated in the Woodbury County Jail in Sioux City, Iowa, on an unrelated bomb charge. Mr. Jack O'Brien (O'Brien) of Sioux City was appointed counsel for Cowell at his arraignment on the bomb charge on September 15, 1977. On that same day, Agent Donald Gromer (Gromer) of the South Dakota Division of Criminal Investigation (DCI) was notified of a possible murder in Union County, South Dakota. Upon learning that a possible suspect for the crime (Cowell) was being held in Sioux City, Iowa, Gromer and Agent Jerry Baum (Baum) traveled to the Woodbury County Jail to interview Cowell.

At the time of this interview, Cowell was not charged with the Clark murder, nor was he being held on it. Agents Gromer and Baum were unaware that counsel had been appointed to represent Cowell on the bomb charge, nor were they so advised by the head jailer with whom Gromer talked upon his arrival at the Sioux City Jail. Prior to his interview with Cowell, Gromer informed him of his *Miranda* rights and Cowell indicated that he understood them.

Agent Gromer then asked Cowell if he was being represented by a lawyer. Cowell replied that he was represented by "God, the Father in Heaven." After receiving this response, Gromer asked Cowell if he was represented by anyone other than God, and Cowell replied that he did not need further representation, that he had nothing to hide, and that he was willing to talk to Gromer and Baum.

A second interview took place on October 3, 1977. At some time before that date, Cowell had been transferred to a mental health facility in Iowa for evaluation. Agent Gromer had learned that Cowell was being represented by O'Brien on the bomb charge. Gromer contacted O'Brien and informed him of his intention to interview Cowell regarding the death of Clark. O'Brien told Gromer that he was not to discuss the bomb charge but could not advise Gromer one way or the other with regard to the South Dakota murder charge, since he was not representing Cowell in that matter. Gromer then interviewed Cowell at the Iowa medical facility. Agent Gromer again advised Cowell of his rights under *Miranda*, which Cowell stated he understood. Cowell did not appear to be under the influence of drugs or alcohol at the time of the interview. At no time during the interview did Cowell ever indicate that he did not want to talk about the murder, that he desired to talk with counsel, or that he wanted the interview to cease.

During the course of both interviews, Cowell made incriminating statements to Gromer and Baum which he sought to suppress before trial. The trial court, after the suppression hearing, made detailed findings of fact regarding the circumstanc-

---

1. 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

2. 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

es surrounding the interviews and determined that Cowell voluntarily waived his privilege against self-incrimination. On appeal in *Cowell I,* Cowell argued that the statements were involuntary because Gromer indulged in scriptural subterfuge and psychological pressures to elicit the statements. We rejected Cowell's arguments and affirmed the trial court's suppression decision in *Cowell I* and we need not reconsider that aspect here.

Subsequent to our decision in *Cowell I,* the United States Supreme Court decided two cases that Cowell seeks to have us apply in this case. In *Edwards v. Arizona, supra,* the Court held:

> [T]hat an accused, * * *, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

451 U.S. at 484–85, 101 S.Ct. at 1885, 68 L.Ed.2d at 386. Then, in *Arizona v. Roberson, supra,* the Court reiterated the *Edwards* rule and extended it to interrogations concerning unrelated offenses. The Court said that:

> As a matter of law, the presumption raised by a suspect's request for counsel—that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance—does not disappear simply because the police have approached the suspect, still in custody, still without counsel, about a separate investigation.

486 U.S. at 683, 108 S.Ct. at 2099, 100 L.Ed.2d at 715.

In the current application for habeas corpus, Cowell sought to have the rules in *Edwards* and *Roberson* applied to the circumstances under which he was interrogated. The habeas court declined to apply the rules on the grounds that they were new constitutional rules that should not be applied retroactively under the standard announced in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

Cowell raises four issues that may be synthesized as two:

(1) Whether the trial court erred in holding that the decisions in *Edwards v. Arizona* and *Arizona v. Roberson* announced new constitutional rules that should not be applied retroactively to his conviction.

(2) Whether Cowell intelligently waived his Fifth Amendment right to counsel when he had been appointed counsel in an unrelated felony and made a comment at his interrogation that he was represented by "God the Father in Heaven," thus implicating his mental capacity to waive his rights.

Our standard of review for habeas corpus proceedings was recently set out in *McCafferty v. Solem,* 449 N.W.2d 590, 591–92 (S.D.1989) (*McCafferty III*).

> The remedy of post-conviction habeas corpus is restricted by the provisions of SDCL 21–27–16 and the prior decisions of this court. The statutory provisions were fairly well summarized in our decision, *State v. Erickson,* 80 S.D. 639, 129 N.W.2d 712 (1964), wherein we pointed out that, since the remedy is in the nature of a collateral attack upon a final judgment, the scope of review in habeas corpus proceedings is limited. As we said: 'habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights.' *Id.,* 80 S.D. at 645, 129 N.W.2d at 715. *See also Goodroad v. Solem,* 406 N.W.2d 141 (S.D.1987). Habeas corpus is not a proper remedy to correct irregular procedures, rather, habeas corpus reaches only jurisdictional error. *Id.* 406 N.W.2d at 143; SDCL 21–27–16. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction. *Goodroad,* 406 N.W.2d at 143; *Podoll v. Solem,* 408 N.W.2d 759 (S.D.1987)....
> Further, we may not upset the habeas court's findings unless they are clearly

erroneous. SDCL 15–6–52(a); *Satter v. Solem,* 422 N.W.2d 425 (S.D.1988).

■ We first determine whether the habeas court was correct in refusing to apply *Edwards* and *Roberson* retroactively. The habeas court relied on *Teague, supra.*[3] That was incorrect. The trial court and parties apparently assumed that the law on retroactive application is a federal constitutional question. While the substance of what is to be applied is a federal constitutional matter, the decision on what criteria to use to determine prospective or retroactive application is a nonconstitutional state decision.

As early as 1932, the United States Supreme Court made this distinction clear. In *Great Northern Railway v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, 366 (1932), Justice Cardozo, writing on the question, said:

> We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions.

Addressing this same question in the criminal venue, the United States Supreme Court held in *Linkletter v. Walker,* 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601, 608 (1965): "[W]e believe that the Constitution neither prohibits nor requires retrospective effect."

The *Teague* decision, merely a plurality,[4] arose in the context of interpreting federal habeas corpus law, a right granted through federal statutes. *See Stone v. Powell,* 428 U.S. 465, 475–76, 96 S.Ct. 3037, 3043–44, 49 L.Ed.2d 1067, 1076–77 (1976); Lafave &

Israel, 3 Criminal Procedure, § 27.2 (1984). The various states, including South Dakota, have created state rights of habeas corpus through statutes. SDCL ch. 21–27. Each sovereign has the right to decide how it will allow access to this extraordinary remedy. The federal government controls how it permits access to the remedy in its courts, and South Dakota establishes grounds that will provide access to habeas corpus in our courts. Simply put, it was error to hold that a federal decision on what criteria to apply for retroactive application of constitutional law in a federal habeas corpus proceeding was controlling on a retroactivity question in a state habeas corpus proceeding.

The correct standard, one that has consistently been the law in this state since 1969, was stated in *McCafferty III.*

> In *State v. One 1966 Pontiac Auto,* 270 N.W.2d 362 (S.D.1978), we established the following criteria to determine whether a particular decision should be given retrospective effect: '(1) The purpose of the decision, (2) reliance on the prior rule of law, and (3) the effect upon the administration of justice.' *Id.* at 365.

449 N.W.2d at 593.

The federal rule to determine retroactivity before *Teague* was found in *Linkletter, supra,* to-wit: The purpose of the [new] rule, the reliance of the state on prior law, and the effect on the administration of justice of a retroactive application of the [new] rule. *Linkletter* was the basis for our State rule. With respect to collateral attacks on convictions, the *Teague* rule is extremely narrow. In fact, the only real issue becomes, is it a new rule? If it is, it is highly unlikely that it will be applied retroactively. The question for this court then becomes, do we want to stay with our

---

**3.** *Teague* announces the federal rule that unless a new constitutional rule falls within one of two exceptions, the new rule will not be applied to a conviction that has become final before the new rule was announced. The two exceptions for cases on collateral review are: (1) if it places "certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe," or (2) if it requires the observance of "those procedures that

... are 'implicit in the concept of ordered liberty.' " 489 U.S. 288, ——, ——, 109 S.Ct. 1060, 1073, 1075, 103 L.Ed.2d 334, 353, 356.

**4.** What was originally a plurality decision apparently became a majority holding in *Penry v. Lynaugh,* 492 U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

old rule or adopt the *Teague* rule for state application.

The *Teague* court, in the spirit of even-handed justice, decided that in all cases on direct appeal where a new rule [5] is announced and applied to the defendant in that case, it is required to be applied retroactively to all who are similarly situated. In cases on collateral attack, primarily habeas corpus cases, of course, the court adopted a different tack. Acknowledging the purpose of the writ of habeas corpus, the court adopted the language of Justice Harlan in his dissent in a trilogy of cases, which included *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), and found:

> Habeas corpus always has been a *collateral* remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal standards in effect when a habeas petition is filed.

401 U.S. at 682–83, 91 S.Ct. at 1175, 28 L.Ed.2d at 415 (emphasis in original).

■ The *Teague* rule allowed for two exceptions for the application of a new rule, as noted in footnote 4, *supra*. We think that they are better stated in *Saffle v. Parks*, 494 U.S. ——, ——, 110 S.Ct. 1257, 1263, 108 L.Ed.2d 415, 428–29 (1990), as follows: (1) If the rule places a class of private conduct beyond the power of the State to proscribe; and (2) it is for "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding. Examples of the first might be criminalizing the pur-

chase of contraceptives, and of the second might be the right to counsel.

We find the *Teague* rule to be unduly narrow as to what issues it will consider on collateral review. Our state standards restricting use of habeas corpus, as established by statute and decisions, adequately restrict what decisions may be reviewed. Therefore, we reject the *Teague* rule of retroactive application and will review the habeas court's decision in the light of our rule as previously announced in *McCafferty III*, *supra*.

■ Cowell first argues that the rules set out in *Edwards* and *Roberson* were not new rules from the safeguards already set out in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), so the retroactive application rule should not have been in question.

In *Solem v. Stumes*, 465 U.S. 638, 647, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579, 589 (1984), the Supreme Court determined that *Edwards* was not retroactively applicable because: "*Edwards* ... did establish a new rule." Again, just this term, in *Butler v. McKellar*, 494 U.S. ——, ——, 110 S.Ct. 1212, 1218, 108 L.Ed.2d 347, 357 (1990), the Supreme Court explained "that *Roberson* announced a 'new rule.' " With deference to the Supreme Court, as authors of the rules enunciated in *Edwards* and *Roberson*, we accept their determination that they are indeed "new rules." Thus, faced with new rules, we must examine the three criteria set out in *One 1966 Pontiac Auto*, *supra*, to determine whether they are retroactively applicable in this case.

First, we examine the purpose of the new rules announced in *Edwards* and *Roberson*. The reason to apply a new decision retroactively is when the new constitutional decision is designed to improve the accuracy of criminal trials. As the *Stumes* court explained:

> The *Edwards* rule has only a tangential relation to truthfinding at trial. As we

---

**5.** A new rule is variously described in *Teague* as one that "breaks new ground," "imposes a new obligation on the States or the Federal Government," or is "not *dictated* by precedent existing at the time the defendant's conviction became final." 489 U.S. at ——, 109 S.Ct. at 1070, 103 L.Ed.2d at 349 (emphasis in original).

have noted in the past, 'the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree.' 465 U.S. at 643–44, 104 S.Ct. at 1342, 79 L.Ed.2d at 587. Most importantly, not applying *Edwards* retroactively will not unfairly prejudice defendant's rights.

The fact that a suspect has requested a lawyer does not mean that statements he makes in response to subsequent police questioning are likely to be inaccurate. Most important, in those situations where renewed interrogation raises significant doubt as to the voluntariness and reliability of the statement and, therefore, the accuracy of the outcome at trial, it is likely that suppression could be achieved without reliance on the prophylactic rule adopted in *Edwards*.

*Stumes*, 465 U.S. at 644, 104 S.Ct. at 1342, 79 L.Ed.2d at 588 (footnote omitted). Likewise, *Roberson*'s additional requirement to supply counsel will not enhance the reliability of the fact-finding process or effect the defendant's rights to suppress an involuntary statement.

Second, there was justified reliance by law enforcement on the law prior to *Edwards* and *Roberson*. At the time of the questioning of Cowell in September and October, 1977, there was no rule that law enforcement could not question a defendant on unrelated charges for which he had not invoked his right to counsel. In fact, in *State v. Sahlie*, 277 N.W.2d 591 (S.D.1979), a case decided while Cowell's conviction was on direct appeal, we noted:

> [T]he mere fact that the defendant has been arraigned or indicted on one charge does not prevent law-enforcement officials from interrogating him, in the absence of an attorney, about another and different crime—upon which he has neither been arraigned or indicted—....

*Id.* at 595 (quoting *People v. Taylor*, 27 N.Y.2d 327, 318 N.Y.S.2d 1, 266 N.E.2d 630 (1971)).

The *Stumes* decision made clear that previous United States Supreme Court decisions seemed to say that waiver cases were to be determined on a case-by-case basis and that there was no *per se* rule that police could not ever question a suspect again until he had seen a lawyer. *Stumes, supra* (citing *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)).

As will be discussed below, Cowell's argument relying on *United States ex rel. Espinoza v. Fairman*, 813 F.2d 117 (7th Cir.1987), claiming that invocation of Sixth Amendment counsel rights also invokes Fifth Amendment counsel rights was made in the lower court in *Butler v. McKellar*, and rejected by the Supreme Court. 494 U.S. at ——, 110 S.Ct. at 1215, 108 L.Ed.2d at 354.

Third, the application of *Edwards* and its refinement in *Roberson* would have a disruptive effect on the criminal justice system. Once again, the *Stumes* court articulates our concerns:

> We can only guess at the number of cases where *Edwards* might make a difference in the admissibility of statements made to the police, but the number is surely significant. In all of those, some inquiry would be required to assess the substantiality of any *Edwards* claim. That investigation, and the possible retrial, would be hampered by problems of lost evidence, faulty memory, and missing witnesses.

465 U.S. at 650, 104 S.Ct. at 1345, 79 L.Ed.2d at 591 (citation omitted). We, too, perceive such problems and note them as valid bases not to apply *Edwards* and *Roberson* retroactively.

■ Weighing all three of these considerations together, a decision that had little to do with truthfinding, reliance by law enforcement on the previous rule, and disruption to the criminal justice system, we conclude that *Edwards* and *Roberson* should not be applied retroactively under our rule. Further, although the trial court used a different standard to reach this same result, we may uphold the trial court if it reached the correct result for the wrong reason. *State v. McCafferty*, 356 N.W.2d 159 (S.D.1984) (*McCafferty I*).

We next examine Cowell's arguments that he did not voluntarily and intelligently waive his *Miranda* rights. He first argues that the appointment of counsel for him at the arraignment for the Iowa bomb charge invoked his Fifth Amendment rights and precluded questioning. Alternatively, he argues that his comment that he was represented by "God, the Father in Heaven" invoked his *Miranda* rights.

Contrary to Cowell's argument, the United States Supreme Court in *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), made it clear that counsel appointed for Sixth Amendment arraignment purposes does not invoke Fifth Amendment counsel rights on totally *unrelated* offenses such as we have here. The *Moulton* court stated:

> [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.

474 U.S. at 180, 106 S.Ct. at 489, 88 L.Ed.2d at 498.

Therefore, merely because Cowell was appointed counsel on the unrelated bomb charges did not trigger Fifth Amendment invocation of counsel for the murder charge. *Moulton, supra.*

We then look to the other aspect of Cowell's issue, that he did not make an intelligent waiver when he responded to the DCI agent that he was represented by "God, the Father in Heaven," and he was shortly thereafter institutionalized for a mental evaluation on the bomb charges in Iowa. As we view *Cowell I,* it appears to us that the issue was raised and disposed of in that decision on direct appeal. As we said there:

> The basic issue before us is whether the defendant knowingly, voluntarily and intelligently waived his rights under the Fifth Amendment to the United States Constitution and Article VI, Section 9, of the South Dakota Constitution before

making incriminating statements during the two interviews.

288 N.W.2d at 323. The decision went on to hold that, considering the totality of the circumstances, the trial court's determination of voluntariness was binding upon this court unless it was clearly erroneous, which we did not find it to be.

As we have previously held, the principle of res judicata is applicable to proceedings upon habeas corpus. *Ex parte Watt,* 73 S.D. 436, 44 N.W.2d 119 (1950); *Ex parte Scott,* 1 Dak. 140, 46 N.W. 512 (1875). We therefore decline to review Cowell's last issue and affirm the trial court on all issues.

HENDERSON, SABERS and MILLER, JJ., concur.

WUEST, C.J., concurs specially.

WUEST, Chief Justice, specially concurring.

I concur in the majority opinion except I would abandon the rule we last stated in *McCafferty III* as follows:

> In *State v. One 1966 Pontiac Auto,* 270 N.W.2d 362 (S.D.1978), we established the following criteria to determine whether a particular decision should be given retrospective effect: '(1) The purpose of the decision, (2) reliance on the prior rule of law, and (3) the effect upon the administration of justice.' *Id.* at 365.

449 N.W.2d at 593.

I would adopt the federal rule set forth in *Teague v.. Lane,* 489 U.S. 288 (1989). Also see, *Saffle v. Parks,* 494 U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). This rule is based on sound reasoning and I can see no reason why we should not adopt it. Here, the different rules applied between state and federal courts merely serve to create confusion for members of the bar. Thus, I would adopt the rule as announced in *Teague.* Pursuant to this rule, the new rules set forth in *Edwards* and *Roberson* clearly need not be applied in the present case.