STATE, Respondent v. SATTER, Appellant

(242 N.W.2d 149)

(File No. 11543. Opinion filed May 25, 1976)

**Peter H. Lieberman,** Asst. Atty. Gen., Pierre, for plaintiff and respondent; **William J. Janklow,** Atty. Gen., Pierre on brief.

**W. A. Hackett** of **Austin, Hinderaker & Hackett,** Watertown, for defendant and appellant.

WOLLMAN, Justice.

Defendant was found guilty by a jury of two counts of murder. He appeals from the judgment of conviction. We affirm.

Defendant was charged under the provisions of SDCL 22-16-7 with killing two men, Jerry Wayne Bowling and Kent Harold Engle. That statute provides:

> "Homicide is murder when perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual."

On April 1, 1973, the sheriff of Codington County received an anonymous phone call advising him that there were bodies in a rock pile south of the town of Kranzburg, South Dakota, and that if the sheriff could not find them himself he should talk to defendant, who was then being held in a local jail on burglary charges. In response to this call, the sheriff went to the area described by the caller but was unable to find any bodies. The sheriff returned to Watertown and questioned defendant about the matter. Defendant told the sheriff that an individual from Minneapolis had come to the Watertown area to collect his percentage of the proceeds from some burglaries that had been committed by Jerry Bowling and another individual, whom defendant claimed not to know, and had shot these two men after learning that they had spent his share of the money. According to defendant, this individual came

to him and offered him $1,000 to go out and burn up the two bodies with a cutting torch, something that defendant could not bring himself to do. Defendant gave the sheriff directions to find the rock pile where the bodies were buried. The sheriff went to the described spot and located the two bodies. One of the bodies had two bullet wounds in the skull; the other body had one bullet wound in the skull. A pathologist testified that in his opinion the bodies, which were badly decomposed, had been deposited at the scene in the fall of 1972 prior to the frost season.

On April 5, 1973, defendant told an agent of the South Dakota Division of Criminal Investigation that two individuals from Minneapolis had come to him and offered him $1,000 to dispose of two bodies and that on the morning of August 20, 1972, one of these two individuals gave him $1,000, showed him a map of where the two bodies were located and directed him to dispose of the bodies.

On April 11, 1973, defendant signed a written statement, which was admitted in evidence, to the effect that at about 9:30 a.m. August 20, 1972, he had driven to a trailer house occupied by Jerry Bowling and Kent Engle that was located near Lake Pelican. Defendant had put a .22 caliber revolver under his belt when he left home, as he was expecting trouble. When he entered the trailer house, he found Kent Engle sitting at the kitchen table. An argument ensued between the two men concerning some nude pictures that Kent Engle had taken of defendant's sister. Engle then walked over to the wall of the living room and drew a small pistol, whereupon defendant drew his revolver and shot directly at Engle's head, hitting him in the right temple. As Engle fell to the floor defendant shot him a second time. Jerry Bowling then came out of a bedroom with a drawn revolver. Defendant shot at him and was in turn shot at by Bowling. Defendant then shot Bowling in the head. Bowling fell to the floor and defendant shot him once more in the head at close range. Defendant left the trailer house and returned at about 6:00 o'clock that night, at which time he put the two bodies into the trunk of his car and washed the blood off the walls of the trailer house. After dark that night defendant buried the bodies in a rock pile located southeast of Kranzburg, where they were

ultimately found by the sheriff.

In addition to the information contained in the written statement, defendant told the DCI agent that he had gone to the trailer house on the day of the killing because he was angry at Bowling and Engle because of the abuse that Engle had given defendant's sister and because of nude pictures that the two had taken of his sister. Defendant stated that he had gone to the trailer to get the pictures of his sister from Bowling and Engle. When he went into the trailer house he saw that the opportunity was ripe to kill the two men. He stated that he had killed them because he was angry at them for the way they had been treating his sister, whom the two men had beaten up and had on one occasion tied up in the trailer house.

In addition to these written and oral admissions made by defendant, the state presented the testimony of one Don Waba, Jr., who had known defendant since childhood. This witness testified that on December 16, 1972, he had had a conversation with defendant during which defendant stated that he had gone out to a mobile home in late August of that year and had become involved in an argument with a man in the living room. This man walked toward the kitchen to get a pistol, at which time defendant shot him in the back of the head. A second individual came out of the bedroom area in the mobile home with a weapon in his hand, at which time defendant turned and shot him twice in the head. Defendant buried the bodies and then later moved them because he was afraid someone might detect the presence of the bodies from the smell.

Defendant took the stand in his own behalf. He testified that he had committed a number of burglaries in South Dakota and in Minnesota with Jerry Bowling and Kent Engle. He testified that his sister had been going with Engle and that problems had developed between defendant and Bowling and Engle because defendant's sister wanted to terminate her relationship with Engle, contrary to Engle's wishes. Defendant was informed by his sister that some pictures had been taken of her at the trailer house occupied by the decedents. Defendant attempted to secure these pictures from Engle, who denied that they existed. Defend-

ant found some pictures of his sister in Engle's car on August 19, 1972, whereupon defendant went looking for Engle but was unable to locate him on that day. Defendant acknowledged that he went to the trailer house occupied by Bowling and Engle on August 20, 1972, armed with a .22 caliber revolver, but testified that he did not go there with the intention of shooting anyone. According to defendant's version of the incident at the trailer house, he showed Engle the nude pictures that Engle had taken of defendant's sister. Words were exchanged and Engle drew a gun, whereupon defendant drew his gun and shot Engle twice in self-defense. As defendant was checking for signs of life in Engle, Bowling came out of a bedroom with a gun by his side. As Bowling started to lift his gun defendant shot at him. After Bowling had shot at and missed defendant, defendant shot at Bowling a second time and as Bowling hit the floor defendant shot him a third time. Defendant left the trailer house and returned some two hours later, put the bodies in the bathroom, and washed the blood off the walls of the trailer house. He returned again later that day and put the bodies into his car, along with a television set that had been struck by one of the bullets. He then buried the bodies under the rock pile described in the written statement.

On cross-examination, defendant, who had been convicted of four prior felonies, including a third degree burglary charge on which he was serving a penitentiary sentence at the time he was tried on the murder counts, admitted that he had shot Bowling in the back of the head as Bowling lay on the floor after he had already been shot twice by defendant. Defendant acknowledged that he had been involved in a gunfight with a sheriff in Nebraska and in a gunfight during an attempted armed robbery in Indiana. He admitted lying to the sheriff about the story of the man from Minneapolis who had attempted to hire him to dispose of the two bodies. He also admitted lying to the DCI agent about collateral matters. He acknowledged that he was a good shot, that he usually hit what he aimed at, and that he did not miss with any of the shots that he had fired at the victims on the day in question.

Defendant has raised two questions on appeal. His first contention is that the trial court erred in denying his motion for a directed verdict of acquittal. Defendant argues that the state

failed to prove that his acts evinced a depraved mind at the time of the shootings. He contends that at most the state's evidence proved that at the time of the shootings he was acting in self-defense.

■ Defendant makes no contention that the court's instructions, which are not included in the settled record, were erroneous in any respect. The lack of a challenge to the court's instruction on the definition of "depraved mind" and the absence of the instruction itself make it difficult for us to review defendant's claim that the evidence is insufficient to prove that his acts evinced a depraved mind at the time of the shootings. We assume that the court correctly instructed the jury on the elements of murder as set forth in SDCL 22-16-7.* Suffice it to say that we conclude that the summary of the evidence set forth above gives lie to defendant's contention that his acts did not evince a depraved mind and that the state's own evidence demonstrated that he was acting in self-defense. From the evidence presented the jury could reasonably find the defendant guilty of the two counts of murder. Accordingly, the trial court did not err in denying defendant's motions for a directed verdict of acquittal. State v. Bates, 76 S.D. 23, 71 N.W.2d 641. If there were any deficiencies in the proof adduced by the state in its case in chief, and we do not intimate that there were any such deficiencies, clearly the evidence was sufficient to warrant the submission of the case to the jury after the defendant took the stand and testified in his own behalf. State v. Zemina, 87 S.D. 291, 206 N.W.2d 819; State v. Olson, 83 S.D. 493, 161 N.W.2d 858.

In his second assignment of error defendant contends that the trial court erred in admitting certain color photographs of the bodies of the two victims inasmuch as the photographs had no

---

* It is not unreasonable to believe that the trial court instructed the jury in accordance with South Dakota Pattern Jury Instructions (Criminal) 3-7-310c, which states in part that " '[d]epraved mind' as used in the statute defining murder, imports 'malice' in the popular sense of ill-will, hatred, spite, or evil intent." Defendant has not cited any authority that would compel the conclusion that this definition is incorrect. For definitions of "depraved mind," see, e.g., State v. Weso, 60 Wis.2d 404, 210 N.W.2d 442, and cases cited therein; Seidler v. State, 64 Wis.2d 456, 219 N.W.2d 320; Ramsey v. State, 114 Fla. 766, 154 So. 855; Smith v. State, Fla.App., 282 So.2d 179; Raneri v. State, Fla.App., 255 So.2d 291; Luke v. State, Fla.App., 204 So.2d 359; Bega v. State, Fla.App., 100 So.2d 455.

probative value, were irrelevant and immaterial for any purpose, and were introduced by the state for no reason but to prejudice the jury.

■ The admission in evidence of photograhs is within the sound discretion of the trial court. State v. Zobel, 81 S.D. 260, 134 N.W.2d 101. As we said in the Zobel case,

> "* * * Admissibility of these slides was, as with the photographs, within the discretion of the trial judge. There was no indication they were distorted or did not portray an accurate representation of the deceased children. Photographs, slides and X-rays are admissible when they accurately portray anything which it is competent for a witness to describe in his own words, or where they are helpful as an aid to a verbal description of objects or conditions and relevant to some material issue. They are not rendered inadmissible merely because they vividly bring to jurors details of a crime or incidentally tend to arouse passion and prejudice. They are a common and recognized medium in this day for depicting events." 81 S.D. at 279, 134 N.W.2d at 111.

See also State v. Aschmeller, 87 S.D. 367, 209 N.W.2d 369; State v. Zemina, supra.

■ Although the pictures are not pleasant to view, they do show the bullet holes in the skulls of the victims and also depict the manner in which the bodies had been placed under the rock pile. Also, one of the pictures was of aid in identifying the body of Kent Engle. Although defendant argues that it was not necessary for the state to introduce the photographs to establish the manner in which the victims were killed or to identify the victims inasmuch as these elements had been established by defendant's written statement, we do not believe that the state should have been required to restrict its proof to defendant's admissions, given the tenuousness that admissions of this nature sometimes develop during the course of a trial. Because the photographs accurately portrayed that which it was competent for the state's witnesses to describe in their own words, and because they were

helpful as an aid to a verbal description of objects and conditions and were relevant to material issues in the case, i.e., the identification of the bodies, the nature and location of the death wounds, the bullet fragments which caused the deaths, and the manner in which the bodies had been concealed and were found, the trial court did not err in admitting the photographs in evidence. State v. Aschmeller, supra; State v. Zemina, supra; State v. Zobel, supra.

The judgment of conviction entered on the two counts of murder is affirmed.

DUNN, C. J., and WINANS and COLER, JJ., concur.