1997 DSD 24

**Steven SATTER, Petitioner,**

v.

**Joseph CLASS, Warden, and Mark Barnett, Attorney General of South Dakota, Respondents.**

Civ. No. 96–1020.

United States District Court,
D. South Dakota,
Central Division.

July 29, 1997.

Steven Allan Satter, Sioux Falls, SD, Pro Se.

Ann C. Meyer, Office of Attorney General, Pierre, SD, for Respondents.

## ORDER DENYING RELIEF UNDER 28 U.S.C. § 2254

KORNMANN, District Judge.

[¶1]Petitioner herein, a prisoner at the South Dakota State Penitentiary, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, Doc. 1, and a memorandum detailing issue, Doc. 2. The Court previously granted petitioner's request to proceed in forma pauperis. Doc. 10. The petition was assigned to U.S. Magistrate Judge Mark Moreno. Doc. 17. The respondents submitted an answer to petitioner's petition, Doc. 12, and a memorandum in support of answer, Doc. 13. Petitioner submitted a response to respondents' answer, Doc. 15. The magistrate judge submitted his Report and Recommendations For Disposition to the Court on

May 23, 1997. Doc. 19. A copy of such Report and Recommendations For Disposition was served upon the parties as required by 28 U.S.C. § 636. The magistrate judge recommended that petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254 be denied in all respects, on the merits and with prejudice, without an evidentiary hearing. Petitioner filed objections to the report and recommendations. Doc. 20.

[¶2]The Court has made a de novo review of the record herein. The Court determines that the findings and recommendations of the magistrate judge, Doc. 19, will be accepted and that the petition for writ of habeas corpus under 28 U.S.C. § 2254 will be denied, on the merits and with prejudice, without an evidentiary hearing.

[¶3]Petitioner's objections do not raise any arguments not previously addressed in his petition for writ of habeas corpus or memorandum of issues. All of petitioner's arguments were fully addressed in the magistrate judge's well-written opinion, Doc. 19. Petitioner's objections will be overruled for the reasons set forth in the report and recommendations, Doc. 19.

[¶4]Now, therefore,

IT IS ORDERED:

(1) The Report and Recommendations For Disposition of U.S. Magistrate Judge Mark A. Moreno, Doc. 19, filed May 23, 1997, is hereby adopted as the Findings of Fact and Conclusions of Law herein.

(2) The objections of petitioner to the Report and Recommendations, Doc. 20, are overruled.

(3) Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254, Doc. 1, is denied in all respects, with prejudice.

### REPORT AND RECOMMENDATIONS FOR DISPOSITION

MORENO, United States Magistrate Judge.

### INTRODUCTION

[¶1]The above-captioned matter was referred to this Court by the District Court [1] pursuant to 28 U.S.C. § 636(b)(1)(B) for the purpose of appointing counsel and holding an evidentiary hearing, if deemed necessary, and for the submission to the latter court of proposed findings of fact and recommendations for disposition of the matter. R.17.

[¶2]After careful review of the records on file, including the state court filings and transcripts in Codington County Crim. No. 73-1014, and based on the totality of the circumstances before this Court, the Court does now make the following findings of fact and report and report and recommendations for disposition in accordance with the District Court's referral order.

[¶3]For convenience, petitioner, Steven Allan Satter, will be referred to herein as "Satter" and respondents, Joseph Class and Mark Barnett, will be referred to as "State". References to the federal and state court records and the transcript of the November 1–9, 1993 jury trial will be made using the letters "R.", "St. R." and "T. Tr." followed by the appropriate page number in the record or transcript.

### PROCEDURAL HISTORY

[¶4]Satter was found guilty by a Codington County jury of two counts of murder on May 10, 1974 and thereafter sentenced to serve two concurrent life terms without the possibility of parole. His conviction was affirmed on direct appeal. *State v. Satter*, 90 S.D. 485, 486, 492, 242 N.W.2d 149, 150, 153 (1976) (*Satter I* ). In his direct appeal, Satter contended, among other things, that the State had failed to prove that his acts evinced the requisite "depraved mind" to convict him of murder and that there was insufficient evidence to counter his self-defense claim. 90 S.D. at 489–90, 242 N.W.2d at 152. The South Dakota Supreme Court, however, rejected Satter's contention and concluded that "[f]rom the evidence presented the jury could reasonably find [Satter] guilty of the two counts of murder." 90 S.D. at 490, 242 N.W.2d at 152.

1. The Honorable Charles B. Kornmann, United States District Judge, presiding.

[¶5]In 1986, Satter filed a petition for post-conviction relief in South Dakota state court, raising three issues, namely:

1. That his statements to the Codington County Sheriff were involuntary;

2. That he received ineffective assistance of counsel; and

3. That two jury instructions given were inadequate.

R.12 at 3. The state habeas court denied his petition, but the South Dakota Supreme Court later reversed, holding that Satter's statements to the sheriff were involuntary and should have been suppressed. *Satter v. Solem*, 422 N.W.2d 425, 428 (S.D.1988) (*Satter II*). The State then sought and obtained a rehearing before the Supreme Court on the limited issues of whether Satter's statements were voluntary and therefore admissible and whether he was denied effective assistance of counsel because of his trial counsel's failure to object to the admission into evidence of two exhibits. *Satter v. Solem*, 434 N.W.2d 725 (S.D.), *cert. denied*, 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 989 (1989) (*Satter III*). After reexamining the issue, the Supreme Court found that Satter's statements were involuntary and remanded the case to the habeas court for further consideration of the statements in light of the "fruit of the poisonous tree doctrine" announced in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *Satter III*, 434 N.W.2d at 728. On remand, the habeas court denied relief but the Supreme Court again reversed. *Satter v. Solem*, 458 N.W.2d 762, 764 (S.D.1990) (*Satter IV*). The Supreme Court held that Satter was entitled to a new trial and accordingly vacated his conviction and remanded with instructions to grant the writ of habeas corpus. 458 N.W.2d at 770.

[¶6]In the meantime, Satter filed a petition in federal court seeking habeas relief under 28 U.S.C. § 2254. *Satter v. Leapley*, 977 F.2d 1259, 1260 (8th Cir.1992) (*Satter V*).

In his habeas petition, Satter claimed that there was insufficient evidence to prove a depraved mind element of the murder charges and insufficient evidence to negate his self-defense assertion. 977 F.2d at 1261. The habeas court[2] found that his claim was procedurally barred and the Eighth Circuit affirmed. *Id.* at 1261, 1263. In doing so, the Court agreed with the habeas court that Satter had procedurally defaulted his deficiency of the evidence claim by failing to pursue the same in state post-conviction proceedings. *Id.* at 1262–63. The Court also noted that Satter's underlying claim, even if not procedurally barred, did not entitled him to habeas relief because the Double Jeopardy Clause did not preclude him from being retried. *Id.* at 1263–64.

[¶7]In accordance with the South Dakota Supreme Court's directives in *Satter IV* and following the Eighth Circuit's decision in *Satter V*, the State filed an Amended Information charging Satter with two counts of "depraved mind" murder in violation of SDCL 22–16–7 (1972). St.R. 486–88. Subsequently, Satter was arraigned on the Amended Information and tried by a jury in Watertown, South Dakota. St.R. 695–98; T.Tr. 2–995. On November 9, 1993, a Codington County jury found Satter guilty of both "depraved mind" murder charges. St.R. 693–94; T.Tr. 993–95. That same day,[3] Satter was sentenced to serve two concurrent life imprisonment terms. St.R. 695–98; T.Tr. 995–96.

[¶8]Satter appealed, and the South Dakota Supreme Court affirmed, in a unanimous decision handed down on January 31, 1996. *State v. Satter*, 1996 SD 9, 543 N.W.2d 249, (*Satter VI*). Satter then filed a *pro se* petition under § 2254 for a writ of habeas corpus and supporting memorandum in federal court, alleging, *inter alia*, that he had been denied "due process under the 5th and 14th Amendments to the U.S. Constitution" because of "[l]ack of notice of the crime

---

2. The Honorable Donald J. Porter, then Chief United States District Judge, presiding.

3. Immediately following the publication of the jury verdict, Satter advised the trial court that he desired to waive his statutory right to a 48–hour

charged."[4] R. 1. The District Court granted Satter leave to proceed *in forma pauperis,* denied his motion for appointment of counsel and then referred the matter to this Court for handling. R. 10, 17.

### FACTS

[¶9]A detailed version of the facts leading up to and resulting in Satter's 1974 convictions is set forth in *Satter I,* 90 S.D. at 486–489, 242 N.W.2d at 150–52. The following is a synopsized rendition of the facts surrounding Satter's 1993 convictions and is offered to provide an appropriate backdrop for his habeas claim.

[¶10]On August 20, 1972, Satter went to a trailer house occupied by Kent Harold Engle and Jerry Wayne Bowling, located on Pelican Lake, in Codington County, South Dakota. T.Tr. 859–63, 890–91. He took with him a .22 caliber revolver and nude photographs of his sister, Marianne Satter, which he had earlier found in Engle's car. *Id.* at 855–63, 890–91, 894–95, 897. Upon reaching the trailer, he entered without knocking and shot Engle, his sister's boyfriend, and Engle's cousin, Bowling, multiple times, killing both of them. *Id.* at 685–89, 692, 722–23, 859–68, 898–99, 901–06. After doing so, he ran out the front door but returned the following afternoon to clean up, put Engle's and Bowling's bodies in the bathroom of the trailer and hide their guns. *Id.* at 868–69, 874–75, 908. Later that same evening, he again returned to the trailer, retrieved the two bodies, put them into his car and then disposed of them in a rock pile south of Kranzburg, South Dakota. *Id.* at 875–76, 908–09.

[¶11]Approximately seven and one-half months later, on April 2, 1973, the decomposed bodies of Engle and Bowling were discovered by law enforcement officials, based in part on certain information the Codington County Sheriff received from an anonymous caller. *Id.* at 499–523, 594. On April 11 and 12, 1973, Satter signed statements admitting that he shot Engle and Bowling

after they drew their guns. *Id.* at 567–688 & Exs. 13, 14, 878–880, 892–94, 906.

[¶12]At trial, Satter claimed he acted in self defense. *Id.* at 863–68, 880, 900–01, 904–05. He testified that he shot Engle when Engle pointed a gun at him in the living room of the trailer. *Id.* at 864–65, 900–03. He also testified that he shot Bowling when Bowling came out of a bedroom with a drawn revolver. *Id.* at 865–66, 904–05.

[¶13]Following the return of guilty verdicts at his new trial, Satter was again convicted of two counts of "depraved mind" murder and sentenced to two concurrent life sentences. St.R. 693–98.

### DISCUSSION

### I. APPOINTMENT OF COUNSEL.

[¶14]Satter filed a motion requesting that counsel be appointed for him pursuant to 18 U.S.C. § 3006A. R.4. In his motion, Satter states that he has been one of two law clerks in the prison law library since 1985 and that as a result of the retirement of the other clerk, he has been left the entire work load of the library and forced to take on additional duties, all of which has been a "strain" on him. *Id.* He asserts that because of the extra work load and duties he has had to undertake and assume, he does not believe he can "do an adequate job" on his and others' cases. *Id.*

[¶15]The District Court denied Satter's Motion, R.10, but subsequently referred the matter to this Court for, among other things, "the purpose[ ] of appointment of counsel . . .", R.17. Although Satter has not filed another motion seeking to have counsel appointed under the Criminal Justice Act, 18 U.S.C. § 3006A, in light of the District Court's referral order, this Court feels compelled to decide whether Satter is entitled to the appointment of counsel in this instance.

[¶16]Initially, it must be observed that there is no constitutional right to coun-

waiting period before the imposition of sentence. T.Tr. 995.

4. Because Satter's petition was filed on April 10, 1996, R. 1, two weeks *before* the President signed into law the Anti–Terrorism and Effective Death

Penalty Act of 1996 (AEDPA), Pub.L. 104–132, 110 Stat. 1214, this Court has analyzed the petition under the prior version of, rather than the new amendments to, 28 U.S.C. § 2254.

sel in habeas actions. *Nachtigall v. Class*, 48 F.3d 1076, 1081 (8th Cir.1995); *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir.1994). A habeas corpus proceeding is civil in nature and "the Sixth Amendment's right to counsel afforded for criminal proceedings does not apply." *Hoggard*, 29 F.3d at 471 (quoting *Boyd v. Groose*, 4 F.3d 669, 671 (8th Cir. 1993)).

[¶17]A court, however, may appoint counsel for a prisoner seeking habeas relief when "the interests of justice so require." *Hoggard*, 29 F.3d at 471; *see also*, 18 U.S.C. § 3006A(a)(2)(B). If the court conducts an evidentiary hearing, the interests of justice require the court to appoint counsel. *Hoggard*, 29 F.3d at 471; Rule 8(c) of the Rules Governing § 2254 Cases. If no evidentiary hearing is necessary, the appointment of counsel is discretionary. *Hoggard*, 29 F.3d at 471.

[¶18]In exercising its discretion, a court should first determine whether a *pro se* habeas prisoner has presented a non-frivolous claim. *Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir.), *cert. denied*, 513 U.S. 857, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994). If the prisoner has presented only claims that are frivolous or clearly without merit, the court should dismiss the case on the merits without appointing counsel. *Id.;* Rule 4 of the Rules Governing § 2254 Cases. If the prisoner has presented a non-frivolous claim; the court should then determine whether, given the particular circumstances of the case, the appointment of counsel would benefit the prisoner and the court to such an extent that "the interests of justice so require" it. *Nachtigall*, 48 F.3d at 1081; *Abdullah*, 18 F.3d at 573, 18 U.S.C. § 3006A(a)(2)(B). In determining whether appointment of counsel is required for prisoners seeking habeas relief with non-frivolous claims, the court should consider the factual and legal complexities of the case, the prisoner's ability to investigate and present clams, the existence of conflicting testimony, and any other relevant factors. *Nachtigall*, 48 F.3d at 1081–82; *Hoggard*, 29 F.3d at 471; *Abdullah*, 18 F.3d at 573.

[¶19]Applying these factors to the case at hand, this Court concludes that the interests of justice do not require the appointment of counsel. The due process claim Satter raises in his petition, while not frivolous or plainly devoid of any colorable merit on its face, *see Bowie v. City of Columbia*, 378 U.S. 347, 349–63, 84 S.Ct. 1697, 1700–07, 12 L.Ed.2d 894 (1964); *Davis v. Nebraska*, 958 F.2d 831, 833–36 (8th Cir.1992); *Moore v. Wyrick*, 766 F.2d 1253, 1254–61 (8th Cir. 1985), *cert. denied*, 475 U.S. 1032, 106 S.Ct. 1242, 89 L.Ed.2d 350 (1986), nonetheless, is not one that involves complex legal or factual issues or one that arises out of conflicted testimony or requires further fact investigation. *Nachtigall*, 48 F.3d at 1082; *Hoggard*, 29 F.3d at 472. It is evident that Satter, a law clerk himself who assists others in preparing legal documents, understands the issues involved and is capable of presenting his claim and responding to the State's arguments. *Id.* His petition and accompanying memorandum are well written and contain proper citations to applicable legal authorities so as to enable this Court to determine whether habeas relief is warranted. *Nachtigall*, 48 F.3d at 1082. Finally, Satter's claim, as well as the attendant issues generated by it, can easily be resolved on the basis of the state court record. *Hoggard*, 29 F.3d at 472. For these reasons, and those previously articulated by the District Court on this issue, *see* R.10, the Court finds it unnecessary to appoint counsel for Satter and declines to do so.

## II. EVIDENTIARY HEARING.

[¶20]The District Court, in its referral order, implicitly requested that this Court determine whether an evidentiary hearing was required on Satter's petition. R.17 ("the above-entitled action is hereby referred ... for the purpose[ ] of ... conducting any necessary hearings, including evidentiary hearings ...") (emphasis added). Satter has not requested an evidentiary hearing or in any way suggested that such a hearing is necessary before his petition can be properly disposed of. Even so, this Court is duty bound under Rule 8 of the Rules Governing § 2254 cases, to decide if an evidentiary

hearing is mandated or otherwise called for here.

■ [¶21]Under applicable law and the rules promulgated thereunder, federal habeas corpus hearings are required if three conditions are met:

1. A petition alleges facts that, if proved, entitle the prisoner to relief, *see Hill v. Lockhart,* 474 U.S. 52, 60, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985); *Blackledge v. Allison,* 431 U.S. 63, 82–83, 97 S.Ct. 1621, 1633–34, 52 L.Ed.2d 136 (1977); *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963); *Pennsylvania ex rel. Herman v. Claudy,* 350 U.S. 116, 120–21, 76 S.Ct. 223, 225–26, 100 L.Ed. 126 (1956); *see also, Houston v. Lockhart,* 982 F.2d 1246, 1250–53 (8th Cir. 1993) *(en banc )* (district court erred in denying hearing to prisoner who had alleged sufficient grounds for release)

2. The fact-based claims are not "palpably incredible" or "patently frivolous or false", and thus survive the summary dismissal standards in habeas corpus proceedings, *see Blackledge,* 431 U.S. at 75–76, 97 S.Ct. at 1630 *(quoting Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962)); *Claudy,* 350 U.S. at 119, 76 S.Ct. at 225; *Houston,* 982 F.2d at 1250–53 (evidentiary hearing required where allegations were "not palpably incredible, and were never subject to a hearing in state court"); *see also, O'Blasney v. Solem,* 774 F.2d 925, 926 (8th Cir.1985) ("[i]f the petition is not frivolous and alleges facts which, even though unlikely, would justify granting the writ, then the petitioner is entitled

to have his allegations fairly tested"); and

3. For reasons beyond the control of the prisoner and his/her counsel (assuming, of course, counsel rendered constitutionally effective assistance), the factual claims were not previously the subject of a full and fair hearing in state court or, if a full and fair state court hearing was held, it did not result in fact findings that resolved all of the relevant factual issues in the case, *see Townsend,* 372 U.S. at 313, 83 S.Ct. at 757, 28 U.S.C. § 2254(d)(1)-(8)(1994); *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 11–12, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992); *see generally,* 1 J. Liebman & R. Hertz, *Federal Habeas Corpus Practice & Procedure,* §§ 20.1a, 20.2–20.4 (2d Ed.1994).[5]

[¶22]This Court has scrutinized Satter's petition and memorandum in light of the criteria/standards imposed by applicable statutory and case law at the time [6], *see* 28 U.S.C. § 2254(d)(1)-(8); *Townsend,* 372 U.S. at 313–22, 83 S.Ct. at 757–62; *Keeney,* 504 U.S. at 5–13, 112 S.Ct. at 1717–22, and concludes that an evidentiary hearing is not obligatory or necessary. Accordingly, no evidentiary hearing shall be held and the Court shall proceed to recommend "such disposition of the petition as [it believes] justice ... require[s]." Rule 8(a) of the Rules Governing § 2254 Cases.

## III. EXHAUSTION.

■ [¶23]The State maintains that Satter's petition is subject to dismissal for failure to exhaust his state court remedies. R.12 at 5–9, 13 at 12–15. According to the State, Satter did not present his federal claim on direct appeal, as he maintains, so as to afford the

---

5. The AEDPA changed, to some extent, the method by which federal courts process facts in 28 U.S.C. § 2254 actions. The changes involve modifications in the standards for according the presumption of correctness to state fact findings and the right to an evidentiary hearing. Section 2254(e)(2) created a specific evidentiary hearing provision, which had not existed in the pre–1996 version of the statute, and § 2254(e)(1) changed prior law. Although not crystal clear, it appears that the Act's amendments to the presumption of correctness (with one possible exception) do, but

that its modifications of the right to a hearing do not, apply to cases filed before April 24, 1996. *See generally,* J. Liebman & R. Hertz, § 20.1d at 136–46 (1996 Supp.)

6. Since the enactment of the AEDPA in 1996, the criteria/standards regarding the availability of an evidentiary hearing have changed. *Compare* 28 U.S.C. § 2254(d) (1994) *with* 28 U.S C. § 2254(e) (1996); *see also,* J. Liebman & R. Hertz, § 20.1d at 142–46 (1996 Supp.).

South Dakota Supreme Court a meaningful opportunity to consider his allegations of legal error. *Id.* In response, Satter asserts that he properly presented his federal claim to the Supreme Court by referring to:

1. His due process right to notice and "to know the nature and cause of the accusation[s] against him";

2. The Fifth and Fourteenth Amendments to the United States Constitution; and

3. Three federal cases that passed on the notice issue and were decided on federal constitutional grounds.

R.2 at 1–2, 15 at 1–2.

[¶24]Before a state prisoner is entitled to federal habeas corpus relief, he must exhaust the remedies available to him in state court. 28 U.S.C. § 2254(b), (c) (1994). As a general rule, the exhaustion requirement is satisfied if the prisoner presents a federal claim to the appropriate state courts in the manner required by state law and thereby provides the state courts with the "opportunity to pass upon and correct" the claim for which federal review is sought. *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (*per curiam*); *Vasquez v. Hillery,* 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986); *see also, Keeney,* 504 U.S. at 9–10, 112 S.Ct. at 1719–20. Once the prisoner has raised a claim on direct appeal to the state's highest court, he has exhausted the claim and need not pursue other state court remedies even if the same are available to him. *Ylst v. Nunnemaker,* 501 U.S. 797, 805, 111 S.Ct. 2590, 2595–96, 115 L.Ed.2d 706 (1991); *Castille v. Peoples,* 489 U.S. 346, 349–50, 109 S.Ct. 1056, 1059–60, 103 L.Ed.2d 380 (1989). After the prisoner has properly availed himself of his state court remedies, the only question that remains for purposes of exhaustion is whether he presented his federal claim in a manner that adequately apprised the relevant state courts of the claim and gave them "an opportunity to apply controlling legal principles to the facts bearing upon [the] constitutional claim." *Picard v. Connor,* 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). The guiding rule is that the prisoner must "fairly present" the "sub-stance" of his claim to the state courts. *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982); *see also, Vasquez,* 474 U.S. at 258, 106 S.Ct. at 620–21; *Picard,* 404 U.S. at 276, 92 S.Ct. at 512–13. In this circuit, to satisfy the "fairly presented" requirement, [the prisoner is] "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in ... state court." *Abdullah v. Groose,* 75 F.3d 408, 411–12 (8th Cir.) (*en banc*), (quoting *Ashker v. Leapley,* 5 F.3d 1178, 1179 (8th Cir.1993)), *cert. denied,* ⎯ U.S. ⎯, 116 S.Ct. 1838, 134 L.Ed.2d 941 (1996). The legal basis for a claim presented in state court must be "the substantial equivalent" of that relied upon in the federal petition. *Picard,* 404 U.S. at 278, 92 S.Ct. at 513; *see also, Schneider v. Delo,* 85 F.3d 335, 339 (8th Cir.) (rejecting state's argument that prisoner's state court pleading should be strictly construed as challenging effectiveness of counsel at sentencing and not guilt stage of proceedings; "the requirement that federal habeas claims must have been presented in state court is not meant to trap a [prisoner] who has poor drafting skills. Mistakes in habeas cases are too high for a game of legal 'gotcha'"), *cert. denied,* ⎯ U.S. ⎯, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996). A claim presented to state courts that is merely "similar" to a federal claim is insufficient to satisfy the "fairly presented" component of the exhaustion requirement. *Abdullah,* 75 F.3d at 412, (*citing Duncan,* 513 U.S. at 365–66, 115 S.Ct. at 888); *see also, Gray v. Netherland,* ⎯ U.S. ⎯, ⎯ – ⎯, 116 S.Ct. 2074, 2081–83, 135 L.Ed.2d 457 (1996) (state court litigation of due process claim of inadequate notice of prosecution's sentencing evidence was insufficient to present conceptually and legally distinct due process claim that state misrepresented evidence it intended to use at sentencing).

[¶25]On direct appeal to the South Dakota Supreme Court, Satter argued in his opening brief that "his right to notice, a fundamental part of the constitutional due process guarantee" deprived him of "his right to know the nature and cause of the accusation against

him, and what [he was] to defend against." R.12, App. C at 17. In support of this argument, Satter cited both Art. VI, § 7 of the South Dakota Constitution[7] and the Fifth and Fourteenth Amendments to the United States Constitution. *Id.* Later, in his reply brief, Satter cited a number of federal and state cases[8] in support of his due process "notice" claim. R.12, App. D at 2–6, 9, 12–13. Satter recognized in both his briefs that no objection had been made at trial to preserve his claim for appeal but asked the Supreme Court to review the claim under the "plain error" rule.[9] R.12 App. C at 13–15, App. D at 6–7, 13.

[¶26]Despite explicitly acknowledging that such a rule "must be applied cautiously and only in exceptional circumstances", the South Dakota Supreme Court went on to address the merits of Satter's claim. *Satter VI,* 1996 SD 9, ¶¶ 11–19, 543 N.W.2d at 251–53. In fact, the Supreme Court identified and made direct reference to Satter's "constitutional

error" claim in its opinion and reached the merits of the same. 1996 SD 9, ¶¶ 15–24, 543 N.W.2d at 252–54.

[¶27]A close examination of Satter's appellate briefs and the South Dakota Supreme Court's decision reveals that Satter has "fairly presented" his federal due process claim under *Duncan, Vasquez, Harless, Picard, Abdullah* and other applicable precedent. Satter apprised the Supreme Court of his notice claim and the constitutional basis for the same. He cited federal cases which analyzed and decided notice claims, like his, under the Constitution, including the Fourteenth Amendment thereof.[10] More importantly, the Supreme Court's characterization of Satter's claim as "constitutional error" and its decision to reach the merits of the claim, even though the same had not been objected to and preserved for appeal, demonstrates that the Court was afforded a full and fair opportunity to pass on the "substance" of Satter's federal claim.[11] Under these cir-

---

7. This constitutional provision states in pertinent part as follows:

   In all criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation against him....

8. Among the cases cited by Satter were the following four federal decisions:

   *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); *Sheppard v. Rees,* 909 F.2d 1234 (9th Cir.1989); *Plunkett v. Estelle,* 709 F.2d 1004 (5th Cir.1983); and *Watson v. Jago,* 558 F.2d 330 (6th Cir.1977). R. 12, App. D at 9, 13.

9. Under this rule, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." SDCL 23–A–44–15. *See State v. Brammer,* 304 N.W.2d 111, 114 (S.D.1981).

10. *See e.g., Plunkett,* 709 F.2d at 1009–10; *Watson,* 558 F.2d at 338–39.

11. The Supreme Court's reference to and subsequent discussion of Satter's "constitutional error" claim in light of "the statute and the cases cited by [him]" and its holding that "no error" occurred in the charging process, *see Satter VI,* 1996 SD 9, ¶¶ 18–19, 543 N.W.2d at 252–53, lends further support to the conclusion that "fair presentment" of the "notice" issue was made in state court. *See Rust v. Hopkins,* 984 F.2d 1486, 1490–91 (8th Cir.), *cert. denied,* 508 U.S. 967, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993) (prisoner fairly presented claim to state court by referring to due process and citing state cases employing

constitutional analysis); *see also, Graham v. Solem,* 728 F.2d 1533, 1536 & n. 4 (8th Cir.) (references to constitutional issue of "guilt by association" and the right to "cross examination" and of "compulsory process" sufficient to exhaust claims), *cert. denied,* 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984); *see also, Williams v. Lord,* 996 F.2d 1481, 1483 (2d Cir. 1993) (reference to "constitutional right to present a defense" sufficiently particular to "call to mind a specific right protected by the Constitution"), *cert. denied,* 510 U.S. 1120, 114 S.Ct. 1073, 127 L.Ed.2d 391 (1994); *Verdin v. O'Leary,* 972 F.2d 1467, 1478, 1481 (7th Cir.1992) (references to accused's "right 'to be present at critical stages of his trial' and his right to 'a fair trial'" were "particular enough to call to mind" underlying Sixth and Fourteenth Amendment rights); *Evans v. Court of Common Pleas,* 959 F.2d 1227, 1231–33 (3d Cir.1992), *cert. dismissed,* 506 U.S. 1089, 113 S.Ct. 1071, 122 L.Ed.2d 498 (1993) (insufficiency of evidence claim, even if framed in state law rather than federal constitutional terms, "necessarily implicates federal due process rights"); *cf., Ford v. Georgia,* 498 U.S. 411, 418–20, 111 S.Ct. 850, 854–56, 112 L.Ed.2d 935 (1991) (no procedural default on equal protection claim even though prisoner's "pre-trial motion made no mention of the Equal Protection Clause, and the later motion for a new trial cited the Sixth Amendment, not the Fourteenth," because the prisoner's challenge to "pattern of excluding black persons from juries 'over a long period of time' could reasonably have been intended and interpreted to raise a claim under the Equal Protection Clause").

cumstances, this Court has little trouble in concluding that Satter has overcome the legal and factual roadblocks described in both statutory and judge-made law [12] necessary to exhaust his claim.

## IV. MERITS OF THE NOTICE CLAIM.

■ [¶28]Having determined that Satter has exhausted his notice claim in state court, this Court must now turn its attention to the merits of the claim. Satter contends that the South Dakota Supreme Court's interpretation of SDCL 22–16–7 (1972) was so radical and unexpected that it violated the Due Process Clause of the Fourteenth Amendment and his "right to know the nature and accusation against him." R.2 at 4–6, 15 at 3–4. Specifically, he argues that the Supreme Court's decision in *Satter VI* was a "distinct departure" from its holdings in *State v. Lyerla*, 424 N.W.2d 908 (S.D.1988), *cert. denied*, 488 U.S. 999, 109 S.Ct. 774, 102 L.Ed.2d 767 (1989) and *State v. Burtzlaff*, 493 N.W.2d 1 (S.D.1992) and was therefore unforeseeable. R.2 at 4, 15 at 4.

■ [¶29]Initially, it must be recognized that a state's highest court has final authority to interpret state statutes and that a federal court is bound by the state court's construction of a state penal statute. *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983); *Davis*, 958 F.2d at 833. A federal court, however, is free to review *de novo* the state court's adjudication of federal due process rights based on the application of federal constitutional principles. *Hagan v. Caspari*, 50 F.3d 542, 544–45 (8th Cir.1995); *Davis*, 958 F.2d at 833. Thus, whether a judicial interpretation of a criminal statute was an unforeseeable change in state law, and as such a deprivation of due process, is a question of federal law subject to independent review by a federal court. *Hagan*, 50 F.3d at 545; *Moore*, 766 F.2d at 1255. To establish a denial of due process, a prisoner "must prove that the asserted error was so 'gross', 'conspicuously

prejudicial', or otherwise of such magnitude that it ... failed to afford [the prisoner] fundamental fairness which is the essence of due process." *Davis*, 958 F.2d at 833 (*quoting Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976)).

■ [¶30]As a general rule, the retroactive application of an unforeseeable interpretation of a criminal statute, if detrimental to a defendant, violates the "fair warning" component of the due process clause. *Hagan*, 50 F.3d at 545; *Davis*, 958 F.2d at 833; *Moore*, 766 F.2d at 1254–55. As the Supreme Court observed in *Bouie:*

> "[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Article I, § 10, of the Constitution forbids.... If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a state supreme court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

\*   \*   \*   \*   \*   \*

■ The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred" must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect.

\*   \*   \*   \*   \*   \*

■ When a state court overrules a consistent line of procedural decisions with the retroactive effect of denying a litigant a hearing in a pending case, it therefore deprives him of due process of law "in its primary sense of an opportunity to be heard and to defend [his] substantive

---

12. *See* § 2254(b), (c) (1994); *Duncan*, 513 U.S. at 365–66, 115 S.Ct. at 888; *Castille*, 489 U.S. at 349–51, 109 S.Ct. at 1059–60; *Vasquez*, 474 U.S. at 254–60, 106 S.Ct. at 618–22; *Harless*, 459 U.S. at 6–8, 103 S.Ct. at 277–78; *Picard*, 404 U.S. at 275–78, 92 S.Ct. at 512–13; *Kelly v.*

*Trickey*, 844 F.2d 557, 558–59 (8th Cir.1988); *Laws v. Armontrout*, 834 F.2d 1401, 1412 (8th Cir.1987), *aff'd on rehrg*, 863 F.2d 1377 (8th Cir.1988) (*en banc*), *cert. denied*, 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989); *Martin v. Solem*, 801 F.2d 324, 330–31 (8th Cir.1986).

right." When a similarly unforeseeable state court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime.

378 U.S. at 353–55, 84 S.Ct. at 1702–03 (citations omitted); *see also, Marks v. United States,* 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977); *Rabe v. Washington,* 405 U.S. 313, 315–16, 92 S.Ct. 993, 994, 31 L.Ed.2d 258, (1972), *United States v. St. John,* 92 F.3d 761, 764 (8th Cir.1996).

[¶31]Not every retroactive application of a judicial construction of law, however, violates the Due Process Clause; it does so only if it "punishes as a crime an act previously committed, which was innocent when done; . . . makes more burdensome the punishment for a crime, after its commission; or . . . deprives one charged with a crime of any defense available according to the law at the time when the act was committed. *Collins,* 497 U.S. at 42, 110 S.Ct. at 2719 (*quoting Beazell v. Ohio,* 269 U.S. 167, 169, 46 S.Ct. 68, 68, 70 L.Ed. 216 (1925)); *see also, United States v. Lanier,* —— U.S. ——, ——, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997).

[¶32]Because SDCL 22–16–7 (1972) was in effect before Satter killed Engle and Bowling, the *Bouie* tests are only met if the South Dakota Supreme Court's interpretation of the statute in *Satter VI* was unforeseeable. The real issue here, therefore, is whether a reasonable person could have foreseen the interpretation given to § 22–16–7 by the Supreme Court. For the reasons discussed below, this Court concludes that the Supreme Court's construction of the statute was eminently foreseeable and did not violate Satter's due process rights.

[¶33]At the time of the two homicides, SDCL 22–16–7, the depraved mind murder statute, read as follows:

Homicide is murder when perpetrated by an act imminently dangerous to others and evincing a depraved mind, regardless of

human life, *although without any premeditated design to effect the death of any particular individual.*

(emphasis added). The South Dakota Supreme Court, relying on a 1986 Wyoming Supreme Court decision,[13] determined that the words "although without any premeditated design" in the statute were used simply to distinguish depraved mind murder from premeditated murder. *Satter VI,* 1996 SD 9, ¶ 16, 543 N.W.2d at 252. According to the Supreme Court, the word "although" was included in the statute to make clear that a defendant could be convicted of murder "even though" there was no evidence of premeditation, not "because" there was evidence of no premeditation. 1996 SD 9, ¶ 15, 543 N.W.2d at 252, n. 2. The Court also emphasized that Satter's claim—that the absence of intent to kill was an affirmative element of depraved mind murder—was not supported by the "plain language of the statute" or by any controlling precedent. 1996 SD 9, at ¶¶ 15–17, 543 N.W.2d at 252 & n. 2.

[¶34]Contrary to Satter's assertions, neither the South Dakota Supreme Court's interpretation of the depraved mind murder statute nor its ultimate holding in *Satter VI* are at odds with *Lyerla,* 424 N.W.2d 908 or *Burtzlaff,* 493 N.W.2d 1. In *Lyerla,* the Supreme Court reversed two of the defendant's three convictions, holding that the crime of *attempted second degree murder* did not exist in South Dakota. 424 N.W.2d at 912–13. In doing so, the Court stated that:

To commit murder, one need not intend to take life; but to be guilty of an attempted murder, he must so intend. It is not sufficient that his act, had it proved fatal, would have been murder.

424 N.W.2d at 913 (*quoting Merritt v. Commonwealth,* 164 Va. 653, 661, 180 S.E. 395, 399 (1935)). Significantly, the Court "did not distinguish between or even discuss premeditated and depraved mind murder." *Satter VI,* 1996 SD 9, ¶ 15, 543 N.W.2d at 252.

[¶35]In *Burtzlaff,* the defendant was charged with *first degree murder and first*

---

**13.** *See Cheatham v. State,* 719 P.2d 612 (Wyo. 1986).

*degree manslaughter*[14] but was convicted only of the latter offense. 493 N.W.2d at 2. On appeal, and with an ironic twist, the defendant argued that she acted with a "design to effect death" in an attempt to show that she did not satisfy one of the elements of the manslaughter charge and therefore could not be convicted of it. *Id.* at 4. Satter erroneously points out what he believes to be a discussion by the *Burtzlaff* Court of an "element" of lack of premeditated attempt to kill found in the first degree manslaughter offense. A review of the *Burtzlaff* decision, however, plainly shows that the "element" Satter refers to, and which the Supreme Court discussed, was one of four ways a defendant could commit manslaughter in the first degree, to-wit: "without a design to effect death, but by means of a dangerous weapon." SDCL 22–16–15(3)(1990). *Satter VI*, 1996 SD 9, ¶ 15, 543 N.W.2d at 252; *Burtzlaff*, 493 N.W.2d at 4. It was not an additional element of the offense for the State to prove.

[¶36]In contrast to other cases finding a Due Process Clause violation, the South Dakota Supreme Court's interpretation of SDCL 22–16–7 (1972) in *Satter VI* is not "clearly at variance with the statutory language" and did not judicially expand the scope of the statute or repudiate a prior, more narrow construction of the statute. *Fogie v. THORN Americas, Inc.*, 95 F.3d 645, 651 (8th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1427, 137 L.Ed.2d 536 (1997); *St. John*, 92 F.3d at 764–65; *compare, Bouie,* 378 U.S. at 350–63, 84 S.Ct. at 1700–07; *Marks*, 430 U.S. at 191–97, 97 S.Ct. at 992–95; *Rabe*, 405 U.S. at 314–16, 92 S.Ct. at 993–94; *Davis*, 958 F.2d at 834–36; *Moore*, 766 F.2d at 1254–61. Instead, the Supreme Court "simply [gave] a common-sense interpretation to a phrase that was in the statute all along." *Knutson v. Brewer*, 619 F.2d 747,

751 (8th Cir.1980); *see also, Fogie*, 95 F.3d at 651; *compare, Moore*, 766 F.2d at 1257–58. The Court did not overrule or undermine prior precedent or deviate from its holdings, including those in *Lyerla* and *Burtzlaff*.[15] *Fogie*, 95 F.3d at 651; *Hagan*, 50 F.3d at 546–47; *Knutson*, 619 F.2d at 749–51; *compare, Davis*, 958 F.2d at 834–36; *Moore*, 766 F.2d at 1257–59.

[¶37]In addition, cases in other jurisdictions, at least one of which was relied on by the *Satter VI* Court, gave ample reason to expect that the depraved mind murder statute might well be given the construction ultimately accorded to it by the South Dakota Supreme Court. *See e.g., State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989); *Cheatham,* 719 P.2d at 622; *State v. Weso,* 60 Wis.2d 404, 408–12, 210 N.W.2d 442, 444–46 (Wis. 1973); *see also, State v. Netland,* 535 N.W.2d 328, 331–33 (Minn.1995) (Tomljanovich, J. concurring). Significantly, the United States Supreme Court has made it clear that a state criminal statute may be validly applied to conduct never before expressly held to be within its terms, when cases in other jurisdictions, decided before the conduct charged, support such a construction. *Rose v. Locke,* 423 U.S. 48, 53, 96 S.Ct. 243, 245–46, 46 L.Ed.2d 185 (1975) *(per curiam ).*

[¶38]This Court's task is not to decide how it would have interpreted SDCL 22–16–7 (1972), if called upon to do so, but rather whether the construction given the statute was foreseeable. *See Knutson,* 619 F.2d at 751. The Court believes that it was. The fact that the statutory language in question had never been previously construed merely underscores this belief and provides credence to it. *Compare, Moore,* 766 F.2d at 1258 ("had the Missouri statute been previously unconstrued, the state's argument might have merit").

**14.** The manslaughter offense was charged under SDCL 22–16–15(3) (1990) which "require[d] the perpetrator to be without design to effect death." 493 N.W.2d at 4.

**15.** In fact, the Supreme Court's decision appears to be entirely consistent with its decisions in other prior second degree murder cases. *See e.g., State v. Jenner,* 451 N.W.2d 710, 723 (S.D. 1990); *State v. Primeaux,* 328 N.W.2d 256, 258 (S.D.1982); *see also, Lyerla,* 424 N.W.2d at 913

(Sabers, J. dissenting) (to commit second degree murder, "one must intend to have a criminally reckless state of mind, i.e., perpetrating an imminently dangerous act while evincing a depraved mind, regardless of human life, *but* without a design to kill any particular person"; SDCL 22–16–7 does not "contain[ ] an element of specific intent ... but simply requires an act ... [that is] dangerous to others (or stupid) under South Dakota law" (emphasis added)).

[¶39]Given these factors, this Court can only conclude that the South Dakota Supreme Court did not apply an overly-novel construction of SDCL 22–16–7 (1972) to conduct that neither the statute nor any prior judicial decision had fairly disclosed to be within its scope. Accordingly, the Supreme Court's decision in *Satter VI,* including its interpretation of § 22–16–7 and application of the statute to Satter's case, was foreseeable and did not offend his federal due process rights. *See Osborne v. Ohio,* 495 U.S. 103, 116–17, 110 S.Ct. 1691, 1699–1700, 109 L.Ed.2d 98 (1990); *Splawn v. California,* 431 U.S. 595, 597–601, 97 S.Ct. 1987, 1989–91, 52 L.Ed.2d 606 (1977); *Rose,* 423 U.S. at 49–53, 96 S.Ct. at 244–46; *Fogie,* 95 F.3d at 651; *St. John,* 92 F.3d at 764–65; *Hagan,* 50 F.3d at 544–47; *see also, Welton v. Nix,* 719 F.2d 969, 970–71 (8th Cir.1983); *Rolling v. Grammer,* 665 F.Supp. 780, 785–87 (D.Neb.1987), *aff'd,* 845 F.2d 1028 (8th Cir.), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2020, 100 L.Ed.2d 607 (1988); *compare, Bouie,* 378 U.S. at 349–63, 84 S.Ct. at 1700–07; *Davis,* 958 F.2d at 834–36; *Moore,* 766 F.2d at 1255–59.

### CONCLUSION

[¶40]Based on the foregoing findings, conclusions and discussion, this Court believes that Satter is not entitled to appointment of counsel, to an evidentiary hearing and, most importantly, to habeas relief. Therefore, in accordance with 28 U.S.C. § 636(b)(1), Rule 8(b) of the Rules Governing § 2254 Cases and the District Court's referral order, R.17, the Court recommends that Satter's petition for a writ of habeas corpus under 28 U.S.C. § 2254, Docket No. 1, be DENIED in all respects, on the merits and with prejudice.

[¶41]Dated this 23rd day of May, 1997 at Pierre, South Dakota.